Council? I assume I'm going to begin, right? I'm sorry? I assume the appellant begins, right? Yes, absolutely. You're first, and the way it works is you've got a total of 15 minutes. That clock in front of you will help you keep time. If you want to reserve some time for rebuttal, you're free to do that. If you know how much time you want to save, let me know, and I'll try and help you in case you get wrapped up in answering questions and aren't paying attention to the clock. I would guess maybe five minutes for rebuttal? Okay, I'll try and help you with the five-minute warning. Go ahead, Mr. Weston. Okay, thank you, Your Honor. This case began with three years of litigation. It was a consumer class action involving products that were labeled as health foods and nonetheless contained trans fat and were essentially candy in their composition and targeted towards primarily the mothers of young children. The case was filed in February 2010, and after a little less than three years of litigation, it had the following result. The monetary relief class that we sought was denied certification. There was an injunction that was entered against Kraft. That was the result of a number of motions back and forth that occurred in the process of briefing an injunction relief class. Mr. Weston, what do we do with the district court's finding that the lawsuit had very little to do with causation because of the fact that Kraft had ceased using the phrases that you particularly objected to prior to the filing of the lawsuit? Well, I would have three responses to that. The first one is the district court did err, as a matter of fact, when it said that Kraft had – it didn't actually say it technically wrong, but the implication was that Kraft had stopped using the label claims. Well, I thought he acknowledged, I think there was one phrase, I can't remember what it was, that was still being used on the labels, but that everything else was no longer in use. At the time the case was filed, the only phrase that was no longer being used is the phrase sensible snacking had been changed to sensible solutions or smart choices. So that was really the only thing that was discontinued prior to the filing of the case. So your argument would be it was clear error for the district court to declare that but for one phrase, the lawsuit had very little to link it to Kraft's decision to discontinue using the other phrases. Well, that goes into catalyst theory, and the point of catalyst theory is if you can't show any other reason that you're a prevailing party, you can use catalyst theory. However, the catalyst is – oh, go ahead. I'm sorry. Well, the district judge found, as a matter of fact, that the class, the injunction that you secured did not cause Kraft to stop the enjoined using the language, and so Judge Tallman's question is we would have to overcome our deference and find by clear error that that was wrong. That's what I sense his question was. Okay. To address that, the district court actually did not make any such factual finding. It said a number of different and contradictory things at hearings, and at times it acknowledged that it made errors, and at other times we provided, you know, references to declarations, and indeed Kraft's own declarations submitted here provide the timeframe when it removed various phrases, and they were during the course of the case. The district court, we put a catalyst theory argument in here, and the district court never explicitly rejected it, and I think the reason why it didn't reach the issue is that it didn't need to. The importance of catalyst theory is if you don't get an injunction, you don't get monetary relief, but the defendant nonetheless changes behaviors, then you argue you're the catalyst for that, and therefore you're a prevailing party. Can I refer you to page 3, footnote 2 of the district court's order of April 11, 2013? Unfortunately, I don't have an ER number stamped. April 11, 2013. It would be the order on the initial fee motion. Thank you. It was not April 8, 2013? I'm looking at the date that it was filed, which I think was April 11. It might have been filed shortly after the argument. I'll just read the footnote into the record. Separately, this court acknowledged that while Kraft decided to stop using a number of the challenge statements before the initiation of this lawsuit, at least one of the challenge labels was used until March 2012, well after the filing of plaintiff's complaint. Is that a true statement? If you interpret at least one very literally, it was far more than at least one, but, yes, that is literally true that there were some that were not used before the case and that at least one was used through March 2012. So if that statement is true, then how can the district court have erred in finding that the lawsuit was not the catalyst for a change in the label content? I don't think the district court came to a specific conclusion on catalyst theory because the point of catalyst theory is whether or not we were the prevailing plaintiff, and it found we were prevailing plaintiffs on other grounds. So it did discuss whether we were the cause. I guess the district court's discussion of it was how big of a success was the case, but it was not whether or not you are the catalyst, which is the point of what we're arguing that. But didn't the district court say that you prevailed on very little? Yes, it did. Okay. So, go ahead. So I guess that was my question. I mean, I'm not sure I'm even agreeing with the district court that you were prevailing party at all. But what's my standard review on that? Well, the district court did – What's my standard of review is my question. On the particular question of who is the prevailing party? Of who is the prevailing party. Well, I'm not sure the issue is under review because – Just a minute. Just a minute. What is my standard of review? If I disagree with the district court, what deference do I have to give the district court on that decision? You give the district court no deference. Yes, a minute. What's the standard of review for prevailing party? Just answer my question. I know what issues are in front of me. I'm just trying to have you look very carefully at what I have in front of me, Counsel. The factual determinations would be abuse of discretion. All right. So I would have to give him some deference on finding a prevailing party. Then, after I find that, then it seems to me that what he did is he then limited the hours. He then went through the award and determined what he thought ought to be cut out based on what you won or you didn't win, but in general saying you were the winning party. Isn't that true? I think the court did not actually go through our hours and decide what we prevailed on and then came to its number. Just a minute. Just a minute. It seems to me that when the district court says they recovered, they filed this case seeking millions to recover millions of dollars for allegedly deceptive labeling. Many of the claims were dismissed. The court denied the class certification multiple times. There was no liability finding. The plaintiffs settled their individual complaint for a dollar figure. That settlement agreement contains no admission of liability. The fact that plaintiffs, not Kraft, have taken an appeal of the class cert is indicative as to which party achieved compared to what was sought. It's hard to see how they could see this as any more than just a mere success. And that, from that, then he went through and he looked at why not limit the hours. And he said, I've got to limit your hours. I think that was an error of law that is not reviewed under abuse of discretion. What do you mean it isn't? You mean how many hours he's going to give you credit for is not an abuse of discretion decision? If he concludes that you were supposed to get 42 hours for doing a particular task, the district court, that would be reviewed. But there's no indication in this record that the district court reviewed our hours and came up with a limit. Well, he doesn't need to just do it on an hourly basis. He can just take a flat route. He can either do it on an hourly basis and look at all the hours all the way down through and then decide what he's going to give or what he's not going to give. Or he can take a general description and just limit you on a general basis, can't he? I disagree with that, Your Honor. I believe the district court was required to, the literal law is that it was required to compile our time. What the district court did here is it came up with a round figure of 200 hours. It didn't say what it's including and what it's not excluding with any specificity whatsoever. And that 200 hours is not something that you get when you compile something. That's something you get when you review the application and just come up with a number from your head that's somewhat arbitrary and you view as fair. That's not something that is the result of a careful compilation of the time we spent in the case. But if the court has already determined that you basically lost every major motion that you filed and your lawsuit was not the catalyst for change, what's wrong with simply saying at best I'm going to give you 200 hours worth of legal fees for the very small portion of the case that you prevailed upon? Well, first of all, Your Honor, there's no you prevailed on part of the case, therefore you're a partial prevailing party. You're either the prevailing party who's entitled to fees or you're not. Well, the district court made it very clear that had this case been controlled by federal law, he would not have found you to be the prevailing party at all. The only reason that he did was he acknowledged the more liberal provisions of the California Consumer Protection Law. But in that respect, he only awarded fees for what you prevailed upon, which he found to be a very small portion of your case. I disagree with that he did that, even that, because we prevailed on the pleading stage. Didn't he say that? I thought he said that at the hearing. We prevailed at the pleading stage, and that involved actually six different hearings, all fully briefed. There's no way that gets done in 200 hours together with the discovery and together with these other things. Well, if you lost on virtually every motion in the case, what's wrong? We didn't. Tell me what major motion you prevailed on, because I read the record and it looked to me like he was right. The first motion to dismiss was mostly denied. They rejected Kraft's puffery argument, they rejected Kraft's primary jurisdiction argument, and they found a small portion of the case preempted. The second motion to dismiss was denied in its entirety. In fact, Kraft was permitted to file two different motions to dismiss, and there was an intermediate third round of briefing for the whole second amended complaint. But even giving you all of that, the court basically said you didn't succeed. You know, the fact that you kept the lawsuit alive for as long as you did doesn't make you the prevailing party if you basically lost on the theory of your case. We didn't lose on the theory of the case. We got an injunction and we settled the case. There was no trial on the merits, but according to the district court, the injunction that we secured was the best we could have achieved at trial, and there's no dispute that the monetary amount was the best an individual plaintiff could have achieved at trial. So the only thing we didn't succeed on in this case was securing the monetary relief. It doesn't seem like the district court believed you, what you're now arguing. It doesn't seem like the district court is all in your corner with that. So that's why I wanted to go to, have you ever read Perez v. Safety Clean Systems? Yes. In that case, which I was a part of, we affirmed the district court's 50% negative multiplier to account for a limited success. Why is it that we cannot do the same kind of a system here? Well, this isn't a 50% reduction. I didn't say it was a 50%, but we approved a 50% negative multiplier. In other words, we said when you don't think the plaintiff has succeeded, you think about how much you think he has succeeded, and you can give a negative multiplier, and that's just fine. Well, I would say a couple of things. One is that that's not what the district court did. It didn't say I'm going to compile the number. Well, now, just a minute, it seems to me that's exactly what he did. There's no compilation. Because he looked at what you did, and he says, you know, I'm going to give him 200 attorney hours, I'm going to give him 30 law clerk and paralegal hours. Twenty percent of the hours were compensated on a senior attorney rate. The remaining was on junior attorney rates. Thirty-six hours of attorney work and three hours of law clerk work on the motion, and that's what they're going to get. Your Honor, may I quote from Thayer v. Wells Fargo Bank? It says, every lawyer, indeed every judge, has presumed blind alleys that initially seem reasonable or even obligatory. To reward only the pursuit of a successful theory in cases undercompensates the inevitable exploratory phases of litigation. There's a number of authorities that say very specifically that the last motion doesn't matter. So you're suggesting that Perez v. Safety Clean is wrong? I'm suggesting that a district court can compile the Lodestar figure, which never happened here, and then apply a reduction if it believes that there is a limit. That is not the only way that they have to do it. That's what Perez says. You can suggest a negative multiplier to account for limited success and decide the case. And that's what the court did here. There was never an initial Lodestar compilation, though. The district court didn't say you had this expenditure of time, and I'm going to reduce it 93 percent to come up with the 200 hours. The district court simply just said 200 hours and didn't say what the 200 hours came from with any specificity. And if I can go to costs as well, in costs we turned in a bill of costs that was $18,132. The district court awarded $2,300. There was no indication anywhere what that $2,300 came from. And, in fact, it wouldn't even compensate us for the court reporters for the depositions that we took. But if those depositions were related to claims on which you did not prevail, there's nothing wrong in the district court discounting them. There is no claim in which we did not prevail because we got an injunction and we got a monetary relief. You're down to ‑‑I'm sorry. I was negligent in not giving you the five-minute warning. I'll give you a couple minutes on rebuttal if you want to save the last 30 seconds. I would like to save the five and a half minutes unless there's anything else I can answer quickly. Two and a half. Oh, two and a half. Okay. Okay. Okay. Good morning, Your Honor. Dean Panos. The court applied the correct approach to determining whether fees can be awarded under the prevailing party standard, applying the pragmatic approach looking under who achieved its litigation objectives. And to answer Your Honor's question earlier, once you've applied the correct legal standard, then there's an abuse of discretion as to its factual determinations because the district court judge is in the best position, as all these cases say, to assess and look at both what the objectives of the plaintiffs were and the way in which the matter was litigated. Obviously, here he applied it broadly. In fact, the district court judge said, I'm going to apply prevailing party very broadly and liberally because if I hadn't done that, as he told Mr. West at the hearing, I would rule that Kraft was the prevailing party. So he could have just as easily, as he recognized, determined that they were not the prevailing party. But, you know, to show that, you know, no good deed goes undone, we're here. And this discussion about the catalyst theory is a little bit irrelevant because he awarded them $100,000 for the injunction. So whether you call it under a catalyst theory or he awarded them under the Consumer Legal Remedies Act or you awarded it under the private attorney general statute, he noted that they were a minor victor in relationship to what it is they had sought. Mr. Panos, in computing that amount, Mr. Weston just argued that the district court did not compute a load star before it applied the negative multiplier. Can you address that argument? I don't think he applied a negative multiplier. He just didn't apply any multiplier. What he did was he looked at the fee petition. And let's understand, once he's ruled what their limited success was, he then had to go through this $3.3 million fee petition, which had all sorts of things in there, including hours by Mr. Weston claiming Well, in total it was $5.2 million, right? If you include the $3 million on the second. Well, it depends. A little unclear. They filed the same petition twice in connection with the small nominal settlement. But the initial fee petition sought $3 million and change, and the second fee petition sought just under $2. Correct. Right. But then the district court said, Hey, wait a second. I've seen this movie before. Exactly. Exactly. Can I ask you a question? Sure. The judge cut the hours. He didn't impose a negative multiplier, right? That's correct. Okay. So the question I believe Judge Smith asked earlier is what's the standard on that? I mean, does the judge have the right at the trial stage to go through and substitute his factual or his judgment on hours? And if so, do we then defer on an abuse of discretion standard to that? I believe that's correct, Your Honor. Indeed, I think the court does have that discretion because that's the judges in the courtroom who's analyzing both the services provided, the difficulty or complexity of the case, and the value provided. And remember, this was a consumer fraud class action seeking millions and millions of dollars for parties. So your argument is that the judge in coming up with his idea about hours and about what is reasonably expended, that he went through the application itself and found 200 hours he approved of and cut out the rest? That's essentially what he did. And as your Honor, remember the standard that this judge is under. He is supposed to award only those fees that are reasonable in relation to the results obtained. That's the Henley standard. Well, I understand that, but I guess what I'm trying to figure out is once determining the prevailing party, then at that point one can go through the hours and limit the hours, or one can make a negative multiplier and do the whole thing by multiplier. One can do either under our standard. My worry in looking what the judge did versus the application, did he really just limit the hours? Well, the answer is he did limit the hours, but understand, as the Schwartz decision in this court said, there is no precise formula in which way to do this. He is not required under the law to do an hour-by-hour analysis. And, in fact, the Schwartz decision from this court said when faced with a massive fee application like this, the court can make across-the-board percentage cuts, that's a quote, and the number of clowers claimed or a final lodestar figure as a practical means of trimming the fat. And that's what the court did here. He said, look, I'm not going to award you fees for all of the efforts in unsuccessful matters, most notably the primary theory upon which plaintiffs went under. He's not going to give you fees for that because he said I'm not going to give you the fees for that. So he went through that and basically cut all those off. He then looked at what was turned out to be an agreed-upon injunction by Kraft Foods and said, look, I'm going to look to see what is a reasonable amount relative to that success that you gave, which, of course, he said could have very easily have gone the other way because Kraft had voluntarily agreed to that order and had ceased most of those claims before. And he was correct in his statement of fact in the record. So he did go through it. And what this judge did is he said, look, I'm looking at this. I'm going to give you 200 hours. And he even went as far as to break it down. He said I'm going to give you 20 percent for senior attorney hours. I'm going to give you 80 percent for junior. I'm going to give you this many for paralegal hours. So I'm not sure a district court judge is required. I certainly don't believe a district court judge is required to do much more than that, particularly when you see the fee petition that he had. Mr. Weston billed 23.8 hours one day supposedly, 23 the next day. I mean, those were in the record. I mean, the judge was looking at this saying, you know, there were five. Well, I guess my questions are as to what you're arguing the judge actually did because it seemed to me that the judge did not take all his hours and then go through the application and scrap some and scrap the next and scrap the next and only leave those which he thought were valuable. But what the judge did is he went through the application. He said, okay, this stuff I think they won on, this stuff I don't, and this is what I think they would have got on that win. Essentially, by also saying he's also awarding in relationship to the success, the limited success that he had. Now, in one sense, he also, when he gave them fees on their fee petition, he gave them, he noted he's going to grant them 36 hours for that and three for that. He did. So he went through that as he should, also noting that the petition was so outrageous he could have denied all of it. They indicated 300 hours in preparing the fee application. So here the plaintiffs are saying it took us 300 hours to do this fee application.  They don't spend that kind of time when the plaintiffs themselves claim they had, it took them 300 hours to put it together. In fact, what the law would. But he also found, did they not, that they'd essentially cut and pasted from a fee application that had been filed in another similar action? He did. He did. There was a similar action in the Smucker, Henderson v. Smucker case where there were, number one, there were entries in there that related to that case for which he sought fees. And then, by the way, in that case, as our judge noted in this case, Judge King in that case similarly denied Mr. Weston's petition. They're also seeking $3.3 million, coincidentally, and also awarding only $72,000 in fees there, finding all sorts of problems with the way in which the fee petition was done, the way the litigation was handled, unreasonable positions taken, just abusive, excessive, flatly, grossly inflated, to use the terms of both judges. And is that what caused Judge Wu to include the comment in the order reminding counsel of their responsibilities under Rule 11 in connection with the continuance motion and the filing of a Second Amendment complaint? I, you know, Your Honor, I'm not sure, to be candid with you. I'm not sure if it was that or if there was a variety of things. I was trying to figure out in the timeline when that comment was made, and it appeared that it was made after he had made written observations about the subject you and I were just talking about. I believe it was after seeing the fee petitions. There's no doubt, Your Honor, that he looked at it. There were some what I think the judge would conclude are somewhat incredible notations in there and things that either were complete error that should not have been provided to the court, so the court has to go through it, or perhaps something more sinister than that. But at the end of the day, the judge did what he had to do and went through it both in terms of both applications. And when it came time for the second fee application, as Your Honor noted, the judge correctly said, look, you've already submitted me this fee petition, these same entries where he actually increased the Lodestar, the application increased the Lodestar. He said, I'm not going to give you $1.9 million for achieving a nominal monetary settlement for the class representatives. I'm going to go through it, and the judge did that and awarded them an additional $11,000, $3,000. And I would note this. The court made an express finding when he granted them the initial $84,000 on the injunction that he was awarding some fees related to unsuccessful motions. So he actually noted in the record that all of it, that he looked at all of the fees, looked at the petition, noting that his award of $200 broken down by senior, junior attorneys, and paralegal did include some amount for unsuccessful motions. So, I mean, the judge exercised appropriately so his discretion in finding both who the prevailing party was under the appropriate standard, how he went through this very massive fee petition, which the law would even suggest that given this, and because the plaintiff made no attempt to give him a fee petition that recognized some matters for which they lost versus some that they had won, which the law says the party should do in that situation. He didn't do that. He sought every minute of every time they claimed to have billed for matters which clearly they did not win on and did not achieve their litigation objectives. Let me ask you, do you want to comment on the blended rate issue? Well, other than to say I think... Do you think it's waived? I do think it's waived. If not waived? If not waived, I think the court applied a reasonable approach to it. In fact, by giving him the blended rate, he gave them hours for senior attorneys more than what they actually... Was that because it's consistent with the prevailing rates? It was. It was, particularly when you look at the level of experience and level of work product and the quality of work product and the way in which the case was handled. I mean, $550 an hour for those attorneys, for any attorney, is a reasonable rate in relationship to what they received. I don't have anything further. Any other questions? I don't think so. Thank you very much. Thank you, Your Honor. Mr. Weston? Thank you, Your Honor. Just in rebuttal, a couple things. There's no possible way that this court knows what that $2,300 cost award came from. There's no way you can even add up the items in our bill of costs to arrive at $2,300. It's a round number that was picked on an arbitrary basis after reviewing the application. That's not what's allowed. What the California Supreme Court requires in Press v. Lucky is a careful compilation. That's the exact phrase that's used. There is no careful compilation that arrived at 200 hours, a suspiciously round number that bears no relation to the amount of time that we actually spent. There was no way we possibly could have secured anything in our case if we had not prevailed on the motions to dismiss. That took seven different hearings or six different hearings on multiple motions to dismiss. If we had not won or at least partially won every one of those stages, we would have had no relief for our client. Counsel, can you address the district court's concern as between the first and the second fee petition that in the second petition you included hours that had previously been included in the first? It was not supposed to be one that the first one was an interim application for the time spent up to then, and then the second one was after judgment when the rules would normally have you file one, and it was for everything that had occurred in the case. So you would concede that there was overlap and that time was requested again in the first fee petition or in the second that had been included in the first? It was, however. There was a monetary relief that occurred in between those two petitions. The monetary settlement occurred right before the judgment. I guess the concern that the district court was articulating was, look, I ruled on whether or not you were entitled to these fees the first time around, and now you're back here with a second fee petition requesting the same hours again. But not only hours that we didn't receive and only after the first fee order was so limited, then we got monetary relief and we had both judgment conditions. It does sound like you're asking twice for the fees that were rejected the first time. In a sense, yes. Why did you do that? Because we had secured additional monetary relief for our clients that had not occurred in the first order. But those hours had already been adjudicated. Why would they not be covered by the law of the case doctrine? The court had already ruled and decided you weren't entitled to recover for those hours. Well, it's a different determination. Something may not have contributed to the injunction but did contribute to the monetary relief. So the hours perhaps were not compensable if there had only been an injunction but were with the combination of the injunction and the monetary relief, which occurred at the end. I also think that the first one, when it's an interim order, there's a little more discretion on what to award, whether to hear it at all. The one that occurred following judgment was the one that the court needed to look at everything. You didn't file a motion for reconsideration when the first interim order was issued, did you? We followed the rules on when to file the fee application, which is that we filed it at the end of the first. Counsel, that wasn't my question. You didn't ask for reconsideration? No. Okay. But we didn't consider it within the central district's rules on motions for reconsideration. Okay. You are out of time. Thank you very much. Thank you, Your Honor. The case just argued is submitted. We'll get you an answer as soon as we can.
judges: Tallman, N.R. Smith, Murphy